# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| MARK STEVEN MASCIOVECCHIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-01048-DGK-SSA |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Mark Masciovecchio ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for Social Security disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434. The Administrative Law Judge ("ALJ") found Plaintiff had the severe impairments of bipolar disorder and attention deficit disorder, but retained the residual functional capacity ("RFC") to perform work as an equipment washer, salvage laborer, and hand packager.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed his application on January 21, 2014, alleging a disability onset date of March 1, 2013. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on July 31, 2015, issued a decision

finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on July 28, 2016, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ made three legal errors that require remand: (1) failing to provide good reasons for discounting his treating psychiatrist's credibility; (2) improperly discounting his credibility; and (3) failing to support the RFC with sufficient medical evidence. After reviewing the record and the applicable law, the Court finds these arguments are without merit.

**I.  The ALJ gave good reasons for discounting Plaintiff's treating psychiatrist's opinion.**

First, Plaintiff argues the ALJ erred by giving no weight to his treating psychiatrist, Mike Young, M.D. ("Dr. Young"). He argues the ALJ's reasoning for discounting Dr. Young's opinion, that it was not supported by the evidence in the record and conflicted with his own treatment notes, is a reason to give Dr. Young's opinion "non-controlling weight," rather than "non-substantial weight."

The amount of weight given a treating medical source opinion depends upon support for the opinion found in the record; its consistency with the record; and whether it rests upon conclusory statements. *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). An ALJ must give controlling weight to a treating medical source opinion if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence. *Id.* The opinion may be given "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). But, the ALJ "may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent

3

opinions that undermine the credibility of such opinions." *Id.* (quoting *Miller v. Colvin*, 784 F. 3d 472, 477 (8th Cir. 2015)).

Here, the ALJ cited several instances where Dr. Young's opinion was inconsistent with the record and his own treatment notes. First, the ALJ gave Dr. Young's opinion that Plaintiff is moderately limited in his ability to "understand, remember and carry out very short instructions and markedly limited in his ability to remember locations and work-like procedures" no weight because she found that opinion unsupported by the evidence in the record and inconsistent with Dr. Young's treatment notes. R. at 25. For example, Plaintiff worked through March 2013 when he was terminated for violating a company policy. R. at 43, 238. Additionally, Dr. Young's treatment notes indicate his condition has remained stable, and his symptoms are typically controlled with prescribed medication. R. at 216, 238, 240.

Next, the ALJ found Dr. Young's opinion that Plaintiff was markedly limited in his "ability to work in proximity to others, use public transportation and take appropriate precautions around normal hazards" was not supported by any objective evidence in the record. R. at 25. For example, Plaintiff states he occasionally takes the bus, and he "get[s] along okay" with people. R. at 43, 53.

Finally, the ALJ discounted Plaintiff's GAF scores because the evidence in the record contradicted Plaintiff suffered from such severe symptoms. R. at 25. A GAF score of 50 can reflect "serious limitations in the patient's general ability to perform basic tasks of daily life." *Brueggemann v. Barnhart*, 348, F.3d 689, 695 (8th Cir. 2003). However, Plaintiff lives alone, R. at 42, generally indicating he can perform the basic tasks of daily life. Also, Plaintiff's GAF score never varied throughout his treatment even though his medication controlled his symptoms. *Compare* R. at 200-02 (visit in April 2012, GAF was 50, mood was good,

medication controlled symptoms), *with* R. at 241-43 (visit in January 2014, GAF was 50, mood was better, medication controlled symptoms). The treatment notes indicated a normal mental health finding and that his medications controlled his attention deficit and bipolar disorders, which contradict a finding that Plaintiff suffers from such severe symptoms. *See* R. at 221–46.

Thus, the Court finds the ALJ gave good reasons for discounting Dr. Young's opinion and the ALJ's reasons were supported by substantial evidence on the record.

## II.     The ALJ properly assessed Plaintiff's credibility.

Next, Plaintiff argues the ALJ erred by not giving specific reasons for discounting his credibility in regards to the "intensity, persistence and limiting effects of his symptoms." R. at 24. Specifically, Plaintiff states the ALJ improperly considered: (1) his activities of daily living; (2) his statement to his doctor that he was feeling "fine"; (3) his work history; and (4) the reason for leaving his previous job. All of these arguments are without merit because the record demonstrates the ALJ considered permissible factors in determining Plaintiff's credibility.

In evaluating the intensity and persistence of a claimant's symptoms, such as pain, the ALJ will assess the claimant's credibility. The Eighth Circuit requires the ALJ to consider the following factors in evaluating a claimant's credibility: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Buckner*, 646 F.3d at 558 (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Of course, "[t]he ALJ need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004) (internal citations omitted). "It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Id.* "If the ALJ

discredits a claimant's credibility and gives a good reason or doing so," the court must defer to the judgment of the ALJ even if every *Polaski* factor is not discussed in depth. *Id.*

Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). When the ALJ discounts a claimant's credibility, he must explain why he did so. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

First, because the ALJ considered Plaintiff's daily activities in conjunction with the medical and other evidence in the record, there is no error. *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (holding the ALJ properly considered the claimant's activities of daily living along with other *Polaski* factors in evaluating the claimant's subjective complaints).

Next, an ALJ is permitted to consider a plaintiff's response to treatment in a credibility analysis. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").[2]

Finally, the ALJ properly considered Plaintiff's work history and reasons for gaps in employment. The ALJ found Plaintiff had a good work record from 2007 to 2011 and then was out of work due to a gambling problem. R. at 24. Plaintiff states he lost his most recent job because he was fired for violating company policy. R. at 53. He also explains that during that same time he was having health problems, he had just gotten divorced, and those problem affected his job performance. R. at 43, 46. Because the ALJ considered Plaintiff's entire work

---

[2] Plaintiff relies on *Hutsell v. Massanari*, to support his argument that the ALJ improperly considered his own statement that he was "doing fine" in the credibility analysis. 259 F.3d 707, 712-13 (8th Cir. 2001) ("[d]oing well for purposes of a treatment program has no necessary relation to a claimant's ability to work or her work-related functional capacity."). However, the issue in *Hutsell* was information the ALJ used in determining the claimant's RFC, not credibility.

6

history, *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (finding ALJ did not err when discounting claimant's credibility because the claimant had a poor work history); *accord Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("a good work history supports a claimant's credibility"), and the circumstances surrounding the loss of Plaintiff's last job, *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than h[is] medical condition."), in conjunction with other *Polaski* factors, there is no error. *See also Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995) (finding ALJ did not err by discounting claimant's subjective complaints of disabling pain after considering he continued to work after his alleged disability onset date).

In sum, the ALJ discussed multiple *Polaski* factors in finding the intensity, persistence, and limiting effects of Plaintiff's symptoms not entirely credible. Because the ALJ gave good reasons for discounting Plaintiff's credibility, the ALJ did not err. *Medhaug v. Astrue*, 578 F.3d 805, 816–17 (8th Cir. 2009) (concluding the ALJ properly discredited the claimant's testimony after considering his own statements and his physicians' opinions that his pain was controlled with medication; the claimant maintained work after his onset date; and the claimant performed daily activities and chores that were inconsistent with his complaints of pain).

## III.  The ALJ supported the RFC with sufficient medical evidence.

Finally, Plaintiff contends the ALJ did not support the RFC with sufficient medical evidence. Although the record contains medical evidence generally, Plaintiff argues the record was insufficient to assess his RFC because the ALJ discounted the opinions from his treating psychiatrists and therefore the record does not contain an *opinion* from a medical source regarding his functional limitations. Pl.'s Br. at 13 (Doc. 7).

This argument is based on the faulty assumption that an ALJ must have a medical opinion to assess the claimant's RFC, and that absent a medical opinion any RFC determination is invalid. If accepted, this argument would shift the burden of proving RFC from the claimant to the Commission. But it is the claimant's burden to prove his RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (noting a medical opinion is not necessary to assess a claimant's RFC).

Here, Plaintiff's RFC was based on his subjective allegations, medical history, examination findings, response to treatment, stability of his condition, daily activities, and other evidence. R. at 24-26. This evidence was sufficient to assess his RFC and there was no error. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   August 30, 2017             /s/ Greg Kays
                                    GREG KAYS, CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT